**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ARTHUR Z. MIEDZINSKI,                  :
                                       :
              Plaintiff,               :        Civ. No. 05-2850 (GEB)
                                       :
        v.                             :        MEMORANDUM OPINION
                                       :
COMMISSIONER OF SOCIAL                 :
SECURITY,                              :
                                       :
              Defendant.               :
                                       :

**Brown, Chief Judge**

This matter comes before the Court upon the appeal of plaintiff Arthur Miedzinski

("Plaintiff") from the Commissioner of Social Security's ("Commissioner") final decision that

Plaintiff was not entitled to disability insurance benefits or supplemental security income under

the Social Security Act ("the Act").  This Court, exercising jurisdiction pursuant to 42 U.S.C.

§ 405(g), and having considered the parties' submissions without oral argument pursuant to

Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.


I.      **BACKGROUND**

        A.      <u>Initial Application and Determination</u>

        On or about January 8, 2002, Plaintiff filed an application for disability insurance

benefits and supplemental security income payments under Titles II and XVI of the Act.

(Record ("R.") at 50-52.)  Plaintiff alleged disability as of October 15, 2001 due to severe back

pain resulting from back surgery in 1994, as well as mental impairments, including Attention

1

Deficit Hyperactivity Disorder ("ADHD"), depression, and anxiety.  (R. at 68-77.)   The claim

was initially denied on November 14, 2002.  (R. at 26-31.)  After filing a timely request for

reconsideration, Plaintiff's claim was again denied on March 25, 2003.  (R. at 32-36.)  On April

17, 2003, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ").  (R. at 37-

39.)

       B.     <u>The Hearing</u>

ALJ Diane C. Moskal conducted a hearing on April 5, 2004 to determine whether

Plaintiff was entitled to benefits.  (R. at 519-63.)  Plaintiff testified that he was forty-six years

old and had completed tenth grade.  (R. at 525-26.)  Plaintiff also testified that his most recent

relevant employment was as a utility worker for Princeton University, where he was in charge of

the "tool room" for network technicians.  (R. at 533-34.)  Prior to that, Plaintiff held a series of

jobs, including warehouse manager of a furniture company, warehouse packer, security guard,

and courier.  (R. 530-33, 555-60.)

Upon questioning by the ALJ, Plaintiff testified that depression and ADHD are the

reasons why he is unable to go back to work.  (R. at 537.)  Although his disability claim was also

based on his alleged back pain, Plaintiff "le[ft] out" testimony concerning that pain during the

ALJ's questioning because he "tr[ies] to deal with it."  (R. at 537.)  When questioned later by his

own counsel, Plaintiff noted that his back pain is constant and intensifies if he "do[es] too

much," resulting in a shooting sensation down his left leg.  (R. at 550, 554.)   Plaintiff also stated

that he was taking prescription medication for pain management, including a Duragesic patch and morphine.  (R. at 543.)  Plaintiff was also taking Provigil, Adderall, and Effexor.  (Id.)

Plaintiff testified that in a typical day he visits friends in his apartment building and helps his neighbors by driving them to the store or doctor's office.  (R. at 540-41.)  He also drives himself and his wife to church twice a week for meetings, and drives his wife around town.  (R. at 545.)  Though unemployed, Plaintiff noted that since filing for disability benefits, he has done "odd jobs" for his sister, including "helping her put up a couple items in the kitchen."  (R. at 536.)  Plaintiff also testified that he can walk roughly one quarter mile, stand in position for twenty or thirty minutes, and sit for about thirty minutes.  (R. at 545-47.)  He is also restricted to lifting no more than twenty-five pounds and can drive comfortably for thirty to forty-five minutes.  (R. at 546, 553-54.)

A Vocational Expert ("VE") also testified at the hearing.  The VE testified that he considered Plaintiff's physical and mental Residual Functional Capacity ("RFC") assessments and the psychiatric review technique form in forming his opinion.  (R. at 558-60.)  After reviewing these materials, the VE stated that Plaintiff is able to perform his past relevant light, unskilled work, including working as a courier, packer, or security guard, albeit at a slower pace.  (R. at 559-60.)

C.    The ALJ Decision and the Objective Medical Evidence Considered

On May 24, 2004, the ALJ issued her opinion, finding that Plaintiff failed to establish that he was disabled within the meaning of the Act.  (R. at 15-22.)  The ALJ evaluated the evidence pursuant to the five-step process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (R. at

16-22.)  The ALJ determined that Plaintiff:  (i) had not performed any substantial gainful activity

since alleging a disability; (ii) had impairments which were severe within the meaning of the

regulations; and (iii) did not have impairments equal to those described in the regulations.  (R. at

16-17.)  At step four, the ALJ determined that Plaintiff was still able to perform his past relevant

work as a packer, courier, and security guard, and therefore was not disabled.  (R. at 20-22.)


      1.    <u>Back Pain</u>

The ALJ concluded that although Plaintiff's musculoskeletal impairment was severe, the

evidence supports a finding that he was able to perform light, unskilled work.  (R. at 21.)   In

making this determination, the ALJ considered:  (i) medical records pre-dating the alleged

disability onset date, including hospital records from 2001; (ii) treatment notes from Plaintiff's

primary care physician, Dr. Joanne B. Kalish, D.O., both before and after the alleged disability

onset date; (iii) the Social Security Administration ("SSA") consultative disability examination

performed by Dr. Evelyn Feng, M.D., in March 2002; (iv) the physical RFC assessment,

completed by Dr. Melvin L. Golish, M.D., in August 2002; (v) medical records from Dr. Robert

A. Carabelli, M.D., Plaintiff's back rehabilitation specialist, from May 2002 to March 2004; and

(vi) Plaintiff's subjective complaints of pain.  (R. at 18-20.)

First, the ALJ reviewed Plaintiff's medical records from immediately prior to the alleged

disability onset date of October 2001.  (R. at 18.)  These records show that Plaintiff was being

treated for his back condition while continuing to "engage in substantial gainful activity."  (R. at

18-19, 330-34.)  The ALJ also reviewed treatment records from Dr. Kalish, Plaintiff's primary

care physician, from before the alleged disability onset date.  (R. at 18.)  These records show that Plaintiff made a series of visits in the months before the alleged disability onset date for unrelated medical issues without reporting any other problems.  (R. at 349-57.)

The ALJ also reviewed the SSA consultative examination, conducted by Dr. Feng in March 2002.  (R. at 18.)  As the ALJ described, Dr. Feng concluded that Plaintiff suffers from chronic lower back pain, with a history of L4 radiculopathy, but noted no significant neurological deficits.  (R. at 18, 358-59.)  Plaintiff reported that he could walk as long as 2.5 miles, but with discomfort, and that his muscle pain increases after standing and sitting for longer than thirty minutes.  (Id.)   Plaintiff's gait was noted as normal, as was his range of motion in his cervical spine, bilateral upper extremities, and bilateral knee, hip, and ankles.  (Id.)

In addition, the ALJ reviewed the physical RFC assessment conducted by Dr. Golish in August 2002.  (R. at 18.)  In this assessment, Dr. Golish deemed Plaintiff able to stand or sit for about six hours in an eight-hour work day, with normal breaks.  (R. at 363.)   Dr. Golish also found that Plaintiff could frequently lift ten pounds, and occasionally lift twenty pounds.  (Id.) Plaintiff was diagnosed with failed back syndrome and chronic cervical spine strain.  (R. at 362.) As noted by the ALJ, Dr. Golish considered Dr. Feng's consultative examination and Dr. Carabelli's notes in making his assessment.  (R. at 18, 363-64.)

The ALJ also considered the medical notes of Dr. Carabelli, who began treating Plaintiff for pain management in May 2002.  (R. at 19, 392-410, 429-43.)  At intake, Dr. Carabelli noted that Plaintiff suffered from chronic pain syndrome and failed back syndrome, and recommended monthly visits to establish a pain medication regimen.  (R. at 406-08.)  The ALJ noted that as of April 7, 2003, Dr. Carabelli described Plaintiff as "totally and permanently disabled."  (R. at 19,

442.)   In her decision, the ALJ explained that she did not accept this opinion because it was not supported by the overall record.  (R. at 19.)   The ALJ partly derived support for that conclusion from Dr. Carabelli's own medical records.  (Id.)  For example, the ALJ stated that on the same day Dr. Carabelli described Plaintiff as "totally and permanent disabled," Plaintiff was taking only Percocet for pain management.  (R. 19, 442.)  In addition, the ALJ cited Dr. Carabelli's medical records from an appointment dated May 5, 2003 noting that Plaintiff had a "moderate perceived disability."  (R. at 19, 440.)  Moreover, the ALJ referenced Dr. Carabelli's records from a June 2003 visit indicating that the medication regimen was working, allowing Plaintiff to "do more activities of daily living," including walking his dog.  (R. at 19, 439.)

Finally, the ALJ considered the Plaintiff's subjective complaints pursuant to the criteria established by 20 C.F.R. §§ 404.1529 and 416.929.  (R. at 17-18.)  The ALJ stated that:

> The claimant's statement concerning his impairments and their impact on his ability to work have not been accepted **in toto** in light of the degree of medical treatment required, the reports of the treating and examining practitioners, the medical history, the findings made on examination, the claimant's assertions concerning his ability to work, and the claimant's own description of his activities and lifestyle.

(R. at 18) (emphasis in original).  The ALJ appears to support this conclusion by noting the evidence in Plaintiff's medical records, his statements to doctors, and his testimony during the hearing about his condition and extent of daily activities.  (R. at 18-20.)

2.   Mental Impairments

Plaintiff also testified that he suffers from and receives treatment for anxiety and ADHD. (R. at 551.)   The ALJ found these mental impairments to be severe, but determined that the

medical evidence supported a finding that Plaintiff is able to perform light, unskilled work.  (R. at 21.)  In making this determination, the ALJ considered:  (i) the consultative SSA Mental Status Disability Exam, prepared by Dr. Alan S. Gordon, Ed. D. on October 18, 2002; (ii) test results from a separate court-ordered evaluation of Plaintiff by Dr. Gordon, dated October 31, 2002; (iii) records from Dr. Martin Weinapple, M.D., Plaintiff's treating psychiatrist, dating from at least 2003 to April 8, 2004; (iv) neuropsychiatric evaluation reports by Dr. Edward H. Tobe, D.O., F.A.P.A., from 1999, 1997, and 1994, prior to the alleged disability onset date; and (v) the Psychiatric Review Technique Form ("PRTF") and mental RFC assessment, performed by Dr. Jane Curran, Ph.D., dated November 12, 2002.  (R. at 17-21.)

First, the ALJ summarized the SSA consultative mental status exam, performed by Dr. Gordon.  (R. at 18.)  In this exam, Plaintiff stated that he had been treated for ADHD, and that he was depressed, but was not receiving treatment at the time.  (R. at 18-19, 384.)  Despite recognizing that Plaintiff appeared disheveled and dirty, and that his legs were constantly shaking, Dr. Gordon found that Plaintiff was "capable of functioning at a normal range of intelligence."  (R. at 18, 386.)  Plaintiff was diagnosed with depressive disorder and ADHD.  (R. at 387.)

The ALJ also reviewed a 2002 court-ordered mental exam performed by Dr. Gordon.  (R. at 19, 388-91.)  This exam indicated a mildly to moderately severe psychological dysfunction, but also rated Plaintiff within a normal range of intelligence.  (R. at 19, 389.)  In addition, the ALJ noted that this testing raised issues regarding the objective validity of Plaintiff's responses to the examination.  (R. at 19, 390 (finding elevated validity scales in "Lie" and "Faking Good Index" categories).)

The ALJ also summarized the psychiatric records from Plaintiff's treating psychiatrist, Dr. Weinapple, which note that Plaintiff was prescribed Effexor and Adderall for anxiety and depression.  (R. at 19, 444-61.)   As the ALJ explained, these medical records also show that after the alleged disability onset date, Plaintiff was encouraged by Dr. Weinapple to return to work, and Plaintiff stated at least twice that he was traveling to Canada to visit his ailing mother.  (R. at 19, 448, 452, 457.)  In addition, Plaintiff himself noted he was searching for work and wanted to return to school.  (R. at 449.)  As the ALJ observed, the records also show that Plaintiff failed to appear for a number of appointments.  (R. 19, 447-48.)

The ALJ also briefly cited the neuropsychiatric evaluation notes of Dr. Tobe from the period prior to the alleged disability onset date.  (R. at 19, 319-25.)  These notes confirm that Plaintiff had long term issues of back pain since 1994 and mental health issues dating to his childhood.  (R. at 323-24.)  The ALJ noted, however, that Plaintiff nevertheless maintained employment at a medium skilled level in 2000 and 2001, immediately prior the alleged onset of disability.  (R. at 19.)

Finally, the ALJ referenced the PRTF and mental RFC assessment, performed by Dr. Curran on November 12, 2002.  (R. at 17, 411-28.)  As the ALJ noted, these reports determined that Plaintiff  had "no more than moderate limitations in social functioning, concentration and activities of daily living."  (Id.)  A review of the mental RFC assessment additionally shows that Plaintiff was deemed no more than moderately limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (R. at 425-26.)   Dr. Curran

concluded that Plaintiff was able to function in a "low contact setting performing simple tasks." (R. at 428.)

        D.    <u>Plaintiff's Appeal</u>

Following the ALJ decision, Plaintiff requested review by the Appeals Council on July 7, 2004. (R. at 10-11.) After receiving additional evidence made part of the record by Plaintiff, on April 13, 2006, the Appeals Council denied the request for review. (R. at 5-9.) Plaintiff subsequently filed this action.

**II.**    **DISCUSSION**

        A.    <u>Standard of Review for Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d. Cir. 2000). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d. Cir. 1999) (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not

satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (internal citations omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

>B.   Standard for Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets certain statutory requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists in the immediate area in which he lives

or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. §§ 404.1520, 416.920.  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing").  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. §§ 404.1520(d), 416.920(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of:  (i) the claimant's capabilities despite limitations imposed by an impairment (the claimant's RFC); and (ii) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able

to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other work in the national economy because of her impairments.  Id.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits.  Id.  If the claimant carries his burdens and demonstrates that the impairments meet or equal those within the Listing, the claimant has satisfied his burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set for the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents him from performing his past work."  Id.  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Id.  The step five analysis "can be quite fact specific . . . ."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 126 (3d Cir. 2000).

C.      The ALJ Decision Was Based Upon Substantial Evidence in the Record

Plaintiff challenges the ALJ's step four analysis, in which the ALJ determined that despite severe back and mental impairments, Plaintiff is capable of performing his past relevant light, semi-skilled work.  (Pl.'s Br. 14-23.)  With respect to his back pain, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she:  (i) failed to adequately consider Dr. Carabelli's conclusion that Plaintiff is "totally and permanently disabled;" and (ii) improperly assessed Plaintiff's subjective complaints of pain.  (Id. at 14-17, 21-23.)

In addition, Plaintiff argues that the ALJ failed to adequately consider Plaintiff's mental impairments in combination with his physical impairment.  (Id. at 17-21.)  In particular, Plaintiff notes a psychiatric assessment by Dr. Weinapple concluding that Plaintiff is "incapable of performing any useful duty right now."  (Id. at 18.)  This assessment was apparently not made a part of the record until after the ALJ decision.  (Id. at 18, 20.)  Plaintiff asserts that the ALJ and the State's psychiatric examiner were therefore not informed by the full scope of Plaintiff's mental impairments.  (Id. at 20.)  With respect to Plaintiff's arguments regarding his back and mental impairments, the Court finds that the ALJ decision was supported by "such relevant evidence as a reasonable mind might accept as adequate."  Plummer, 186 F.3d at 427 (quoting Ventura, 55 F.3d at 901).


1.      Plaintiff's Back Pain

In his April 2003 report, Dr. Carabelli noted that Plaintiff  is "totally and permanently disabled."  (R. at 442.)  The ALJ considered and rejected this "conclusory opinion" of  Dr.

Carabelli.  (R. at 19.)  Specifically, the ALJ stated:  "I properly do not accept this conclusory opinion as controlling, given its lack of support in the overall record."  (Id.)  Plaintiff contends that the ALJ improperly rejected Dr. Carabelli's conclusion because she:  (i) failed to adequately explain her rejection of this evidence; (ii) failed to fully consider other findings by Dr. Carabelli; and (iii) should have instead requested clarification from Dr. Carabelli before rejecting his assessment.  (Pl.'s Br. 15-17.)

In addition, the ALJ did not accept the totality of Plaintiff's subjective complaints regarding his impairments and their impact on his ability to work.  (R. at 18.)  Plaintiff contends that the ALJ improperly assessed Plaintiff's subjective complaints of pain.  (Pl. Br. 21-23.)  Specifically, Plaintiff argues that the ALJ:  (i) improperly based her decision to not accept the totality of Plaintiff's statements solely on a perceived lack of objective evidence; and (ii) mischaracterized Plaintiff's statements regarding the extent of his daily activities.  (Id.)

a.  The ALJ's Rejection of Dr. Carabelli's Assessment Was Supported by Substantial Evidence

This Court concludes that the ALJ's assessment of Plaintiff's back pain, and her rejection of Dr. Carabelli's statement, are supported by substantial evidence in the record.  First, Dr. Feng's SSA consultative disability exam reveals that despite a diagnosis of chronic lower back pain, Plaintiff's range of motion was within normal limits, his gait was normal, and he used no devices to support ambulation.  (R. at 359.)  Moreover, Dr. Feng's report noted that Plaintiff could stand and sit for thirty minutes before his muscle pain flared, and could walk 2.5 miles, albeit with discomfort.  (R. at 358.)

Dr. Golish's RFC assessment, dated August 2002, provides further support for the ALJ's conclusion.  The RFC assessment diagnosed Plaintiff with chronic cervical spine strain and failed back syndrome.  (R. at 362.)  This report also stated that Plaintiff was able to frequently lift ten pounds, could stand, sit, or walk for roughly six hours in an eight-hour work day with regular breaks, and was unlimited in his ability to push or pull.  (R. at 363).  In reaching these conclusions, Dr. Golish considered Plaintiff's medical records, including Dr. Feng's report from March 2002 and Dr. Carabelli's notes from May and June 2002.  (R. at 363-64.)

Although Plaintiff argues that Dr. Carabelli's assessment supports a finding of disability, Dr. Carabelli's own medical treatment notes reasonably support the ALJ's conclusion.  In November 2002, tests administered by Dr. Carabelli indicated only a "moderate to severe perceived disability."  (R. at 394.)  Similarly, Dr. Carabelli's notes from May 5, 2003, one month after his statement that Plaintiff was "totally and permanently disabled," describe Plaintiff's disability as a "moderate perceived disability."  (R. at 440.)  Dr. Carabelli's notes from June 2, 2003 indicate that the prescribed pain management regimen was improving Plaintiff's condition, "enabling him to do more activities of daily living."  (R. at 439.)   No adverse side effects from the prescribed medication are noted in Dr. Carabelli's records.

Plaintiff also argues that the ALJ ignored certain findings of Dr. Carabelli and impermissibly set "her own lay opinion against that of the doctor."  (Pl.'s Br. 15-16.)   In particular, Plaintiff contends that the ALJ ignored Dr. Carabelli's assessment of his limited range of motion, tenderness in certain muscle groups, positive orthopedic testing, and a consistent diagnosis of chronic pain syndrome.  (Id.)

15

This Court notes again that the RFC assessment performed by Dr. Golish concluded that Plaintiff was able to frequently lift ten pounds, and stand, walk, or sit for about six hours in an eight hour day (with regular breaks).  (R. at 363.)  Dr. Golish specifically supported his conclusion with Dr. Carabelli's findings from May and June 2002.  (R. at 364.)  Dr. Golish nevertheless concluded that despite his limitations, Plaintiff was physically able to stand, sit, and walk for sufficiently long to support light work.  (R. at 363.)

Finally, Plaintiff contends that if the ALJ believed that Dr. Carabelli's findings were inadequate or inconsistent, "she should have requested clarification from the doctor or at least made such feelings known to former counsel."  (Pl.'s Br. 17.)  According to the regulations, an ALJ is only required to recontact medical sources when the evidence received from a treating physician, psychiatrist, or other medical source "is inadequate . . . to determine whether [a claimant is] disabled."  20 C.F.R. §§ 404.1512(e), 416.912(e).  As noted above, substantial evidence in the record supports the ALJ's decision that Plaintiff was able to perform his past relevant light, unskilled work.  Therefore, this Court concludes that the ALJ was not required to seek additional clarification from Dr. Carabelli.

b.      The ALJ Properly Assessed Plaintiff's Subjective Complaints of Pain

The ALJ did not accept the totality of Plaintiff's statements concerning his impairments and alleged inability to work.  The ALJ based that decision on medical reports, Plaintiff's assertions concerning his ability to work, and Plaintiff's description of his own daily activities. (R. at 18.)   In response, Plaintiff argues that the ALJ:  (i) inappropriately based her

16

determination solely on a perceived lack of objective medical evidence in the record; and

(ii) mischaracterized Plaintiff's statements regarding the extent of his daily activities.  (Pl.'s Br.

21-23.)  Plaintiff contends that the ALJ therefore failed to properly consider the credibility of his

subjective complaints of pain and did not afford Plaintiff's remarks proper deference.  (Id.)

(1)    The ALJ Considered the Relevant Factors in Assessing
       Plaintiff's Subjective Complaints of Pain

Plaintiff argues that the ALJ did not fully consider all the relevant factors outlined in the

regulations for assessing his subjective complaints of pain.  (Id. at 22-23.)   For example,

Plaintiff asserts that the ALJ failed to consider the location, duration, frequency, and intensity of

Plaintiff's pain, factors that precipitate the pain, and the extent of medication Plaintiff took to

alleviate the pain.  (Id.)  Plaintiff contends that the ALJ improperly relied solely on a perceived

lack of objective evidence and an evaluation of Plaintiff's daily activities in determining that

Plaintiff could perform his past relevant light unskilled work.  (Id.)

Pursuant to the regulations, the "intensity and persistence" of a plaintiff's symptoms,

including pain, must be evaluated "[w]hen the medical signs or laboratory findings show that [he

has] a medically determinable impairment(s) that could reasonably be expected to produce

[those] symptoms."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  However, subjective

complaints of pain alone do not constitute a disability.  See Green v. Schweiker, 749 F.2d 1066,

1070 (3d Cir. 1984).  A claimant's own statements about the extent of his symptoms will be

determined to diminish his ability to work only to the extent that these statements "can

reasonably be accepted as consistent with the objective medical evidence and other evidence."

17

20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4); see also Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (noting that claimant's testimony as to pain may not be disputed without contrary medical evidence).

      In his hearing before the ALJ, Plaintiff stated that his back pain felt "like a vice," resulting in shooting pain down his left leg if he "do[es] too much." (R. at 550.) Plaintiff described the pain in his left leg as feeling "like a sword being put through [his] leg and back." (R. at 554.) When the pain reaches this level, Plaintiff testified that he "cannot do anything," but that he deals with the other pain "pretty well." (Id.) Despite Plaintiff's arguments, the ALJ's decision concerning his subjective complaints of pain was based on substantial objective medical evidence. First, the SSA consultative exam by Dr. Feng in March 2002 supports the ALJ's decision. (R. at 358-59.) Dr. Feng's report diagnosed Plaintiff with chronic lower back pain. (R. at 359.) However, Dr. Feng found no significant neurological deficits, with the exception of some decreased sensation in the "L4 distribution." (Id.) Dr. Feng also noted that Plaintiff's range of motion was within normal limits, he had no muscle tenderness, his gait was normal, and he was able to walk at a reasonable pace without using any devices for ambulation. (Id.)

      Second, the RFC assessment conducted by Dr. Golish in August 2002 also supports the ALJ's conclusion that Plaintiff, despite the extent of his back pain, would be able to function at light, unskilled work. (R. at 362-69.) After reviewing the medical notes of Dr. Feng and Dr. Carabelli, Dr. Golish diagnosed Plaintiff with chronic cervical strain and failed back syndrome.

(Id.)  He nevertheless determined that Plaintiff can frequently lift up to ten pounds, and stand, walk, or sit for about six hours in an eight hour work day with normal breaks.  (R. at 363.)

Dr. Carabelli's medical notes also support the ALJ's conclusion.  (R. at 392-410, 429-43.)  These records indicate that Plaintiff was receiving medication to alleviate his symptoms, including morphine and Adderall, but do not report any side effects.  (Id.)  The notes also show that the prescribed pain management regimen was helping to mitigate Plaintiff's chronic pain and allowing him to perform more daily activities.  (R. at 439.)

(2)  The ALJ Properly Assessed the Extent of Plaintiff's Daily Activities

Plaintiff also argues that the ALJ mischaracterized Plaintiff's account of his "minimal" daily activities, such as running errands, driving to doctors' appointments, visiting friends, and attending church.  (Pl.'s Br. 21-22.)  Plaintiff contends that performance of these activities does not correspond with the ability to perform work.  (Id.)  However, substantial evidence in the record supports the ALJ's conclusion that Plaintiff is able to perform his past relevant light, unskilled work.

First, Plaintiff's own testimony regarding his condition and the extent of his daily activities supports the ALJ's conclusion.  Plaintiff testified that he walks without any support, although he occasionally uses an unprescribed cane when the weather is bad.  (R. at 525.)  In addition, Plaintiff testified that although he has difficulty driving, he frequently drives his neighbors and wife on errands to the store or doctor's office, and drives to church twice weekly.

(R. at 541-42, 545.)   Plaintiff further testified that he is able to drive for thirty or forty-five

minutes without difficulty.  (R. at 553-54.)

Other evidence in the record also support the ALJ's decision.  As noted by the ALJ, the

record shows that Plaintiff stated he was visiting his mother in Canada at least twice during the

alleged disability period.  (R. at 20, 448, 452.)  Moreover, as of January 2004, Plaintiff reported

that he was looking for work.  (R. at 448-49.)  The record also shows that in an application for

state dependency benefits in December 2001, two months after the alleged disability onset date,

Plaintiff reported that he was able and available for work and that he was actively seeking

employment.  (R. at 56.)   The record also shows that Plaintiff was employed and engaging in

substantial activity prior October 2001 while being treated for his back pain, the very same

condition that Plaintiff now claims renders him unable to work.  (R. at 18, 330-33.)


2.    Mental Impairments

In a memorandum dated April 7, 2004, Dr. Weinapple, Plaintiff's treating psychiatrist,

noted that Plaintiff is "suffering from a mental disorder which, for the most part, renders him

incapable of performing any useful duty right now."  (R. at 478.)  This "narrative" was

apparently not made part of the record until after the ALJ issued her opinion.  (Pl.'s Br. 18.)  The

narrative was prepared by Dr. Weinapple at the request of Plaintiff's counsel at that time and is

described as a summary of his medical records.  (R. at 477.)  The ALJ nevertheless determined

that Plaintiff's psychiatric limitations are "no more than moderate."  (R. at 17.)  The ALJ

concluded that Plaintiff's mental limitations, in combination with his physical impairment, would not prevent Plaintiff from returning to his light, unskilled past relevant work.  (R. at 20.)

Plaintiff argues that the ALJ failed to properly consider Plaintiff's psychiatric limitations in combination with his physical impairments because:  (i) neither the ALJ nor the State Agency examiner had the opportunity to review Dr. Weinapple's narrative; (ii) the ALJ improperly characterized Dr. Weinapple's underlying treatment notes; and (iii) the ALJ improperly relied on the VE's responses to questioning at the hearing.  (Pl.'s Br. 17-21.)

   a. <u>The ALJ's Assessment of Plaintiff's Psychiatric Impairments is Supported by Substantial Medical Evidence</u>

Plaintiff argues that neither the ALJ nor the state psychiatric examiner had the opportunity to review the narrative report of Dr. Weinapple, which concluded that Plaintiff is "incapable of performing any useful duty right now."  (Pl.'s Br. 18.)  Plaintiff therefore contends that the ALJ decision was not based on substantial evidence in the record.  (<u>Id.</u> at 20.)  However, substantial medical evidence supports the ALJ's conclusion that Plaintiff has the capacity to perform light, unskilled and low level semi-skilled work despite the combination of his mental and physical impairments.  (R. at 20.)

First, the SSA consultative psychiatric exam, conducted by Dr. Gordon in October 2002, supports the ALJ's assessment.  (R. 384-87.)  Dr. Gordon diagnosed Plaintiff with depressive disorder and ADHD.  (R. at 387.)  Although Dr. Gordon noted that Plaintiff's appearance was "disheveled" and his "legs were constantly shaking," he concluded that Plaintiff was "capable of

functioning at a normal range of intelligence." (R. at 386.)  In assessing the severity of

Plaintiff's mental condition, Dr. Gordon noted that "[b]asically, his problem is his back." (Id.)

The PRTF and mental RFC assessment, conducted by Dr. Curran, the state psychiatric

examiner, in November 2002, also supports the ALJ conclusion.  (R. at 411-28.)  In the PRTF,

Dr. Curran noted that Plaintiff's mental condition rendered him only moderately limited in

activities of daily living, maintaining social functioning, and maintaining concentration,

persistence, or pace.  (R. at 421.)  Similarly, in the mental RFC assessment, Dr. Curran

determined that Plaintiff was not significantly limited in understanding and memory, and was no

more than moderately limited in sustained concentration and persistence, social interaction, and

adaptation.  (R. at 425-26.)  Dr. Curran concluded that Plaintiff is capable of adequate attention,

concentration, pace and persistence, and can relate and adapt adequately to function in a low

contact setting performing simple tasks.  (R. at 428.)

Moreover, Dr. Weinapple's own treatment records from 2003 to April 2004 support the

ALJ's conclusion.  (R. at 444-61.)  For example, on April 8, 2003, Dr. Weinapple encouraged

Plaintiff to return to work in response to comments by Plaintiff that his lawyer was working on a

disability case.  (R. at 457.)   In July 2003 and January 2004, Plaintiff reported to Dr. Weinapple

that he was traveling to Canada to visit his mother.  (R. at 448, 452.)   Moreover, Dr.

Weinapple's notes from January 2004 also indicate that Plaintiff was actively looking for work

and wanted to return to school.  (R. at 449.)

b.     The ALJ Properly Characterized Dr. Weinapple's Underlying
        Medical Records

Plaintiff also argues that the ALJ improperly focused on statements by Dr. Weinapple

that Plaintiff was encouraged to return to work and that Plaintiff received treatment infrequently.

(Pl.'s Br. 19.)  In essence, Plaintiff argues that although Dr. Weinapple encouraged Plaintiff to

get back to work, it "does not indicate that he could" work.  (Id.)  Plaintiff also asserts that it was

inappropriate for the ALJ to hold lack of treatment against a mentally impaired claimant,

especially since mental illnesses frequently go unreported and untreated.  (Id.)

First, this Court notes again that the mental RFC assessment performed by Dr. Curran

supports the ALJ's conclusion that Plaintiff's mental impairments did not preclude him from

performing light, unskilled work.  (R. at 425-28.)  Despite a diagnosis of ADHD, depressive

disorder, personality disorder, and polysubstance dependence, Dr. Curran found that Plaintiff

was capable of functioning in a low-contact setting performing simple tasks.  (R. at 425, 428.)

With respect to Plaintiff's arguments concerning lack of treatment, Plaintiff misinterprets

the ALJ's conclusion.   This does not appear to be a situation where, as Plaintiff asserts, he is

"one of [the] millions of people who did not seek treatment for a mental disorder . . . ."  (Pl.'s Br.

19 (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).)  The record shows that

treatment was available to Plaintiff, but on at least three occasions he failed to show up for

scheduled appointments with Dr. Weinapple.  (R. at 447-48, 458.)  Further, the record shows that

as of Plaintiff's hearing before the ALJ in April 2005, Plaintiff was receiving medical assistance

through Medicaid.  (R. at 538.)  Thus, substantial medical evidence supports the ALJ's

conclusion that Plaintiff has the capacity to perform light, unskilled and low level semi-skilled work despite the combination of his mental and physical impairments.

c.  <u>The ALJ Appropriately Relied on the VE's Responses at the Hearing</u>

Finally, Plaintiff contends that absent the detailed psychiatric report from Dr. Weinapple, the questions posed by the ALJ to the VE at Plaintiff's hearing did not adequately account for Plaintiff's psychiatric limitations.  (Pl.'s Br. 20.)  Plaintiff argues that the ALJ therefore cannot rely on the VE's responses in assessing the Plaintiff's RFC.  (<u>Id.</u>)

This Court concludes that the ALJ properly questioned and relied on the responses of the VE.  In the PRTF examination, Dr. Curran found that Plaintiff was moderately restricted in activities of daily living, social functioning, and concentration, persistence, and pace.  (R. at 421.)  The ALJ questioned the VE about Dr. Curran's findings.  (R. at 559-60.)  In response to a question about the impact of this assessment on Plaintiff's ability to perform light work, the VE responded:  "I don't think it would have any impact.  Things may be done at a slower pace, but moderate does not preclude employment."  (R. at 560.)  Plaintiff's attorney additionally questioned the VE about whether his assessment takes into account the effects of Plaintiff's depressive disorder and ADHD.  (R. at 560-61.)  In response, the VE reiterated that "moderate doesn't preclude employment."  (R. at 561.)  The ALJ's conclusion regarding Plaintiff's psychiatric impairments was therefore supported by substantial evidence in the record.

24

**III.    CONCLUSION**

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: June 13, 2007

___ s/ Garrett E. Brown, Jr. _____
GARRETT E. BROWN, JR., U.S.D.J.

25